David O. Tilburn v. Commissioner.
Tilburn v. Commissioner
Docket No. 55006.
United States Tax Court
T.C. Memo 1955-236; 1955 Tax Ct. Memo LEXIS 104; 14 T.C.M. (CCH) 950; T.C.M. (RIA) 55236; August 23, 1955
Verne-Marie Freeman, Esq., 111 Sutter Street, San Francisco, Calif., for the petitioner. John Potts Barnes, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax and additions under section 291 for failure to file timely returns as follows: Addition
under
Year
Deficiency
Section 291
1944
$1,366.65
$341.66
1945
1,377.74
344.44
1946
793.00
198.25
1947
1,045.00
261.25
1948
1,114.44
278.61
1949
1,287.68
321.92
1950
1,508.80
377.20
1951
2,122.65
530.66
1952
66.01
16.50
*105 The facts are found in accordance with the stipulation filed by the parties. The principal issue for decision is whether the petitioner, an alien, was a resident of the United States or a nonresident, during the taxable years. A nonresident alien is taxable only on income from sources within the United States. The Commissioner has taxed the petitioner with income from sources outside the United States as a resident alien. [Findings of Fact] The petitioner has spent practically all of his life in the Orient. He was born there in 1896, was married there in 1920, had his children born there from 1921 to 1926, and worked there without interruption from 1916 until war resulted in his internment in Japan from December 8, 1941 to his release on an exchange ship which took him to South Africa in the summer of 1942. His parents were British, residing in China, and he was a British subject at all times material hereto. His family resided with him in China and Manchuria until war conditions caused his employer to change its policy and request that his wife and two daughters remain in Vancouver, B. C. where they had stopped in 1940 while on a furloughvisit. He returned to them in Vancouver *106 on October 26, 1942 after his release by the Japanese. He had been employed by Standard-Vacuum Oil Company, hereafter called the Company, since 1934 and expected to continue in that employ in the Orient when hostilities no longer prevented. However, the Company notified him in January 1943 that his employment was terminated and no assurance could be given that it would reinstate him or that he would qualify eventually for rights under its annuity and insurance plan upon resumption of its business in the Far East. The petitioner had intended to become an American citizen and to retire in California after qualifying for a pension from the Company. He, his wife and two daughters entered the United States on August 31, 1943 on permanent resident visas as China quota immigrants, travelling on British passports. They arrived in San Francisco on September 5, 1943. They lived at a hotel for 20 days, after which they lived in a furnished apartment. The petitioner tried unsuccessfully to obtain employment in California and then wrote the Company on September 13, 1943, asking for a place with an affiliated company in the United States so that his insurance and retirement rights would be continued. *107 He received a reply on October 5, 1943, offering reinstatement with the Company on assignment to India. The scheduled departure date was October 23, 1943, and the Company recommended that the petitioner leave his family in the United States. He accepted the offer by telegram on the day he received it but, due to a fire on the scheduled ship, was unable to leave the United States until December 6, 1943. He intended to stay in the Orient indefinitely and took all of his personal possessions with him. His employment thereafter by the Company in India and later in China and Japan continued until his compulsory retirement on January 1, 1952, with terminal leave beginning September 30, 1951. He lived in a hotel, joined a club and paid income taxes in India. He joined a club in Japan and paid income taxes there except when exempted. He remained in Japan after his retirement by the Company and worked for the United States Army until August 7, 1952. Meanwhile he visited the United States twice, from October 23, 1945 to February 2, 1946, and from August 24, 1949 to October 8, 1949. He next entered the United States on September 19, 1952, intending to return to Japan after a stay of one year, *108 but he has never been able to obtain income tax clearance from the Internal Revenue Service and is still in the United States trying to obtain permission to leave. The petitioner was thus physically present in the United States for only 3 months and 7 days in 1943 and thereafter made two visits in over nine years prior to the termination of his long employment in the Orient, which he intended to continue when he left the United States in 1943, yet the Commissioner contends that he was continuously a "resident" of the United States during all of those years for income tax purposes so that his salary, earned entirely outside the United States, is taxable to him under the laws of the United States. The Commissioner relies, to some extent, upon statements made by the petitioner on income tax returns and in applications to the immigration authorities, to the effect that he was a resident of the United States and intended to return there. He stated in 1947, for example, in an application for extension of a re-entry permit, that he resided at "3607 Park Blvd., Oakland, California" [1] and possessed a "Declaration of Intention to become an American citizen." Nevertheless, the Immigration *109 and Naturalization Service ruled on October 10, 1949, despite numerous similar effective applications, that he had not "resided continuously in the United States for at least one year after his admission to the United States for permanent residence" and, as a result, was not entitled to the benefits of section 307(b) of the Nationality Act of 1940 to cover absence from the United States for naturalization purposes. [2] Those authorities thus refused to recognize that the petitioner was a resident of the United States while he was in India, China and Japan. The tax returns filed in January 1946 and the fall of 1949 were accepted by the Commissioner as those of a nonresident alien to permit the petitioner to leave the country despite his statements therein that he was a resident of the United States. Obviously the statements in the returns and applications misled neither the Internal Revenue Service nor the Immigration and Naturalization Service and can not refute the fact that the petitioner physically resided outside the United States and made few visits to it. *110 [Opinion] The question is not one of domicile and cases on that subject are not in point. The distinction which the Code and Regulations make is between resident aliens and nonresident aliens. See section 211 I.R.C. of 1939; Regulations 111, section 29.211-1; Bowring v. Bowers, 24 Fed. (2d) 918, certiorari denied 277 U.S. 608, and the question is - was the petitioner a resident or nonresident alien during the years 1944 through 1951 and until September 19, 1952. The Regulations in distinguishing between resident and nonresident aliens use such terms as "actually present in the United States" and "lives in the United States." Reg. 111, section 29.211-2. The petitioner was not actually present in the United States and did not live here from December 6, 1943 until September 19, 1952 but was actually present and living elsewhere, except for two visits. He resided first in India, later in China and finally in Japan during that period. He never set foot on the United States during the years 1944, 1947, 1948, 1950 and 1951. Regulations 111, section 29.211-4 on Proof of Residence of Alien, provides that "An alien, by reason of his alienage, is presumed to be *111 a nonresident alien" but the presumption may be overcome by proof, in the case of an alien about to return to his native country, that at least six months prior thereto he filed a declaration of his intention to become a citizen or form 1078 or its equivalent or by proof of acts or statements showing a definite intention to acquire residence in the United States or an extended stay sufficient to constitute him a resident. The petitioner had no such proof when he left in December 1943. He had then been in the United States for only 3 months and 7 days during most of which he had been trying to get out of the United States to start work on a permanent job in the Orient. He filed a "declaration of intention to become a citizen" on December 3, 1943 and sailed three days later for a permanent job in India. Thus he left as a nonresident alien, as the Commissioner recognized twice thereafter in 1946 and 1949 when the petitioner presented himself for determination of his tax liability prior to his departures for the Orient. This is not a case of an alien who was actually present and living in the United States for a period or purpose which of itself might constitute him a resident before he *112 left in December 1943 and is distinguishable from all cases of those kinds. No case with comparable facts has been cited or discovered. This case must be decided upon its own facts. Leonard Larsen, 23 T.C. 599. However, cases involving the question of whether a United States citizen was a bona fide resident of a foreign country for the purpose of section 116(a) are helpful by analogy since the criteria used therein are the same as those which are applicable in determining whether an alien is a resident of the United States. David E. Rose, 16 T.C. 232; Reg. 111, section 29.116-1. The petitioner's wife and two daughters were living in a rented furnished apartment in Oakland when he departed for India in 1943 and a few days before he left he made some arrangements to purchase a house in Oakland at 3607 Park Boulevard in the names of himself and his wife as joint tenants. The deed was delivered, the wife and daughters moved their furniture from Vancouver and they began to occupy the house after the petitioner had embarked for India. The petitioner never lived in the house. He wrote to his wife from India on July 31, 1945, in part, as follows: "We agreed to *113 part many years ago when the children grew up… Much better that we part now while we both have 15 to 20 years or more of life wherein we will still have time to readjust ourselves. We have fulfilled the pledge we would not desert the children in their childhood & youth. Now that they are grown up & it was our agreed time they will understand… Had there been any possibility of reconciliation it would have been after my return from Japan… "Had the war not come about I would have asked you to take this step in 1940 - the war intervened and left us in poor circumstances. We are not in grand circumstances now, but I do feel that we can arrange matters that both of us can be satisfactorily accommodated." He settled matters with his wife when he returned to the United States later that year and gave his interest in the house at 3607 Park Boulevard to his daughter, Joan, his youngest child, born in 1926. His sole assets when he returned to the Orient, other than his personal effects, were about $36 in his pocket and a small balance in a bank account in New York. He never lived with his wife after some time in 1943. The facts related in the preceding paragraph show that the wife *114 and two daughters had a residence in the United States in 1943 but the petitioner departed in that year before they had obtained their own home and never thereafter lived with his wife. He resided apart from his wife and daughters during all of the taxable years and it is unrealistic and contrary to the facts to hold that his residence was with them in Oakland. A husband may reside apart from his wife and family, although not "legally separated" from his wife, and this one actually did that during all of the taxable years. Cf. Seeley v. Commissioner, 186 Fed. (2d) 541; David E. Rose, supra; Leonard Larsen, supra. The possession by the petitioner of an immigrant's visa rather than a visitor's permit or temporary visa is not conclusive of his classification as a resident of the United States. Mim. 5883, 1945 C.B. 244, 246. The facts herein show that the petitioner had undertaken to make a lifetime career out of foreign service employment, particularly in the Orient, and the circumstance of his temporary presence and one month search for employment in the United States in 1943, while wartime conditions prevented his return to his *115 former overseas position, must be viewed against this entire background. Cf. Leonard Larsen, supra. The Commissioner erred in taxing the petitioner with income earned by him outside the United States during the period beginning January 1, 1944 and ending September 19, 1952. Cf. Swenson v. Thomas, 164 Fed. (2d) 783; Audio Gray Harvey, 10 T.C. 183. The petitioner raises alternative issues which need not be considered once the principal issue is decided for the petitioner. The petitioner reported annuity income of $959.96 for 1952, to represent 3 per cent of the consideration paid. The Commissioner, in determining the deficiency, reduced that income to $148.74 on the ground that the 3 per cent should apply only to the amount contributed by the petitioner to the cost of the Company annuity. The parties have now stipulated that the petitioner received the annuity payments for only 11 months in 1952 instead of for 12 months as reported, and the correct amounts of taxable annuity are $879.96, if the petitioner's contention that the Company's contributions are includible in the "consideration paid" for the annuity, and $136.35, if only the petitioner's *116 contributions are includible in "consideration paid." The Commissioner wants to limit the 1952 income from this source to $136.35 while the petitioner contends it should be $879.96. This is a false issue as to 1952 and the Tax Court refuses to become involved in the decision of it. The petitioner can wait until the Commissioner attempts to increase the tax upon his theory of what is includible in the "consideration paid." It is possible that the point never will arise and meanwhile the Tax Court has plenty of real issues to keep it busy. Cf. General Equipment Co., 2 B.T.A. 804, 811. The Commissioner, of course, is not claiming any increase in tax in this connection over that shown on the return, while the taxpayer refuses to claim any overpayment, consequently for 1952, as for the other years, the decision will be that there is no deficiency. Decision will be entered for the petitioner. Footnotes
1. This house then belonged to his daughter. The petitioner never occupied for a moment any habitation owned by him in the United States. ↩
2. It appears that the petitioner's efforts to become a citizen of the United States did not go beyond the filing of the Declaration of Intention prior, at least, to 1952.↩